UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CARL SINATRA WATKINS,

        Petitioner,                      Case No. 1:16-cv-294

v.                                                  Honorable Robert J. Jonker

SHERMAN CAMPBELL,

        Respondent.
_____/

**OPINION**

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Factual Allegations**

Petitioner is incarcerated at the Carson City Correctional Facility in Carson City, Michigan. The Saginaw County Circuit Court convicted Petitioner of one count of armed robbery, in violation of MICH. COMP. LAWS § 750.529, following his plea of guilty on October 25, 2011. In exchange for Petitioner's plea, the prosecutor dismissed another count of armed robbery as well as one count of attempt to commit armed robbery. The plea agreement did not include any terms with regard to Petitioner's sentence. At the plea hearing, the court informed Petitioner that the count of armed robbery carried a potential maximum sentence of life imprisonment. (ECF No. 2-1, PageID.22-23.) Petitioner informed the court that no person had made any promises to him to induce him to plead guilty other than what had been stated on the record. (ECF No. 2-1, PageID.23.) Petitioner also informed the court that no person had told Petitioner that his sentence would be lighter than what had been stated on the record. (ECF No. 2-1, PageID.23-24.)

On December 21, 2011, the court sentenced Petitioner to a minimum of eight years and a maximum of twelve years' incarceration. The pre-sentence investigation report referenced a prior felony conviction for robbery from the State of Georgia. The inclusion of that conviction had a significant impact on the scoring for Petitioner's minimum sentencing guidelines range.

Petitioner's counsel informed the sentencing judge that the Georgia conviction increased Petitioner's minimum sentencing range by more than five years at the low end of the range and by as much as eight years at the high end of the minimum range. (Sentencing Transcript, ECF No. 2-1, PageID.88.) Petitioner's counsel argued that the Georgia conviction should be disregarded because the Georgia State Board of Pardons and Paroles had pardoned Petitioner on January 16, 2008. (Pardon, ECF 2-1, PageID.68.)

The court reviewed the pardon supplied by Petitioner's counsel and concluded that, by its terms, it appeared to be similar in nature to an expungement under Michigan law. (ECF No. 2-1, PageID.89-90.) Based upon that conclusion, the court considered the Georgia conviction when it computed the minimum range under the sentencing guidelines. (*Id.*) The minimum range was 81 to 135 months. (*Id*. at PageID.94.)

At sentencing, Petitioner was permitted to address the court directly. Petitioner noted that he had fully cooperated with the prosecutor and that he accepted the plea agreement with the understanding that the minimum would be two years and three months. (ECF No. 2-1, PageID.91.) The prosecutor noted that there had been no agreement with respect to sentencing. (*Id*. at PageID.92.) Petitioner's counsel concurred and explained that Petitioner was referencing counsel's calculation of the minimum range if the Georgia conviction were not considered. (*Id*.) Petitioner's minimum sentence of eight years fell within the minimum guideline range taking into account the Georgia conviction. (*Id*. at PageID.94.)

Petitioner sought leave to appeal his conviction and sentence to the Michigan Court of Appeals raising two issues: (1) whether trial counsel was ineffective in his representation by not stating on the record what the calculations would be if the Georgia pardon were taken into consideration as he had discussed with Petitioner prior to the plea; and (2) whether the trial court erred in not allowing the Georgia pardon to be considered in the scoring of the guidelines and setting the sentencing guidelines at 81 to 135 months. (ECF No. 2-1, PageID.102.) On May 3, 2013, the court of appeals denied the application for leave to appeal for lack of merit in the grounds presented. (*Id*. at PageID.57.)

Petitioner applied for leave to appeal to the Michigan Supreme Court raising, presumably, the same issues he had raised in the Michigan Court of Appeals.[1] The supreme court denied the application initially on September 3, 2013, and then upon reconsideration on November 25, 2013.

Petitioner subsequently filed a motion for relief from judgment under MICH. CT. R. 6.500 *et seq.* in the Saginaw County Circuit Court. In his motion, Petitioner raised the overarching concern that his appellate counsel had provided ineffective assistance because counsel had failed to raise six issues:

> A.   Ineffective assistance of trial counsel for failing to pursue an insanity defense.
>
> B.   Ineffective assistance of trial counsel for failing to file a motion to obtain independent examination for criminal responsibility.
>
> C.   Ineffective assistance of trial counsel for advising defendant to waive preliminary examination.
>
> D.   Ineffective assistance of trial counsel for failing to file a motion to suppress confession to police.
>
> E.   Did trial court err when it departed from sentencing guidelines without substantial and compelling reasons.
>
> F.   Ineffective assistance of trial counsel for failing to object to trial court departing from sentencing guidelines.

(ECF No. 2-1, PageID.120, 127.) On April 21, 2014, the court denied Petitioner's motion concluding that Petitioner had "not shown that the result of his case would have been different, and therefore, appellate counsel was not ineffective for failing to raise these issues." (ECF No. 2-1, PageID.60.) The court also rejected Petitioner's underlying issues of ineffective assistance of trial counsel. (*Id.*)

---

[1] Petitioner does not attach to the petition his initial application for leave to appeal to the Michigan Supreme Court.

Petitioner sought leave to appeal the Saginaw County Circuit Court's decision to the Michigan Court of Appeals. The court of appeals denied leave on December 11, 2014. (ECF No. 2-1, PageID.61.) Petitioner then turned to the Michigan Supreme Court; but that court denied leave to appeal on November 24, 2015. (ECF No. 2-1, PageID.62.)

On March 22, 2016, Petitioner filed a petition for writ of habeas corpus under 28 U.S.C. §2254. The petition raises the two issues raised in the direct appeal of Petitioner's conviction and sentence as well as the six issues raised in his Rule 6.500 motion.[2]

## Discussion

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

---

[2] Although the issues are essentially the same, Petitioner has expanded Issue A from his Rule 6.500 motion, raised as Issue III in the habeas petition, to include appellate counsel's failure to raise the involuntary character of his plea in light of the misunderstanding regarding his expected sentence.

This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 83, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted). The court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular . . . case." *Williams*, 529 U.S. at 407. A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no

'fairminded disagreement' on the question." *White*, 134 S. Ct. at 1706-07 (quoting *Harrington*, 562 U.S. at 103).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference). The presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. at 1096. Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Harrington*, 562 U.S. at 99-100 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v.*

*Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

    I.         Petitioner's guilty plea

It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Put simply, "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Id..* Petitioner raises several claims of antecedent constitutional violations that are barred by his guilty plea. To the extent trial counsel rendered ineffective assistance when he recommended waiver of the preliminary examination, failed to pursue an insanity defense, failed to file a motion for an independent examination to determine criminal responsibility, or failed to file a motion to suppress Petitioner's confession to police, those shortcomings were "irrelevant to the constitutional validity of the conviction" based on Petitioner's guilty plea. *Haring v. Prosise*, 462 U.S. 306, 321 (1983).

The guilty plea does not bar all claims. Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267. Petitioner's claims do not challenge the power of the state to bring him into court. Thus, the only means available for challenging his conviction is to claim that his plea is invalid, i.e., it was not knowingly and voluntarily entered into. A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969); *Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is

well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S. 742, 749 (1970). In order to find a guilty plea constitutionally valid, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of

competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel).

### A. Petitioner's competence

Petitioner first suggests that his plea was invalid because he was not competent to plead guilty. The materials Petitioner submitted along with his petition disclose that he has a history of mental illness. The trial court referred Petitioner to the Center for Forensic Psychiatry for an evaluation of Petitioner's competency to stand trial. (ECF No. 2-1, PageID.60.) The court noted that Petitioner was deemed competent to stand trial.[3] (*Id*.) Petitioner's trial was scheduled to begin on October 25, 2011, the day he pleaded guilty. (ECF No. 2-1, PageID.76.) Petitioner further indicates that his plea coincided with his mother's death, suggesting that the duress caused by his mother's death rendered him incompetent to plead.

There is nothing in the record to indicate that the court was aware of the death of Petitioner's mother at the time his plea was taken. Petitioner did put the issue before the trial court in connection with his Rule 6.500 motion. (ECF No. 2-1, PageID.63-64.) The court's opinion with respect to Petitioner's competence did not change with that information.

"A state-court determination of competence is a factual finding, to which deference must be paid." *Franklin v. Bradshaw*, 986 F.3d 439, 437 (6th Cir. 2012) (citing *Thompson v.*

---

[3]Petitioner's contention that the standard of competence for a plea is somehow greater than the standard of competence to stand trial is wrong. *See Godinez v. Moran*, 509 U.S. 389 (1993) (holding that the standard for pleading guilty is the same as the competency standard for standing trial).

*Keohane*, 516 U.S. 99, 108-11(1995). "[T]he findings of the state court must be upheld unless there is clear and convincing evidence to the contrary." *Clark v. O'Dea*, 257 F.3d 498, 506 (6th Cir. 2001) (applying 28 U.S.C. §2254(e)(1)). Petitioner offers no clear and convincing evidence to contradict the state court's determination. Accordingly, this Court must defer to the state court's factual finding of competence.

                B.     A maximum 27 month sentence

A plea of guilty "must be [a] knowing, intelligent act [ ] done with sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 748. In *Boyd v. Yukins*, 99 Fed.Appx. 699 (6th Cir. 2004), the court explained the consequences a defendant must be aware of to render a plea knowing and intelligent:

> For a plea to be intelligent and knowing, the trial court must ensure that the defendant is "aware of the direct consequences of the plea." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). Significantly, "the defendant must be aware of the maximum sentence that could be imposed." *Id.* at 154; *cf. Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir. 1991) (holding that a plea was not knowing or intelligent when a trial court incorrectly informed defendant that the maximum sentence was fifteen years when in fact it was seventy-five years). Additionally, the defendant must be informed about any mandatory minimum sentences, which may impact the defendant's decision to plead guilty. *See United States v. Stubbs*, 279 F.3d 402, 412 (6th Cir. 2002) (ruling that a guilty plea was invalid when defendant was not aware that he was not subject to a mandatory-minimum sentence); *United States v. Goins*, 51 F.3d 400, 405 (4th Cir. 1995) (holding that failure to inform a defendant of a mandatory-minimum sentence rendered a guilty plea invalid).

*Id.* at 702-703.

At the plea the prosecutor stated the entirety of the negotiated settlement as follows: "The defendant will be pleading guilty to Count II, armed robbery. In exchange, Count I, armed robbery, and Count III, attempt to the commit armed robbery, would be dismissed." (ECF No. 2-1, PageID.76.) Petitioner and his counsel confirmed the prosecutor's statement was a correct statement

of the agreement. (*Id*. at 76-77.) Petitioner stated that he understood his guilty plea carried a potential maximum sentence of life or any term of years and not less than two years. (*Id.* at 77-78.) Petitioner acknowledged that no person had promised him anything to get him to plead other than what had been stated on the record. (*Id.* at 78.) Petitioner specifically denied that any person had told him that his sentence would be lighter than what had been stated on the record. (*Id.* at 78-79.) The prosecutor and Petitioner's counsel also denied the existence of any promises or inducements other than as previously stated on the record. (*Id.* at 79.) The court accordingly found that the plea had been "understandingly, knowingly, voluntarily and accurately made." (*Id.* at 81.)

Based upon the plea hearing transcript, the trial court's finding appears to be a reasonable determination of the facts that is consistent with and a reasonable application of clearly established federal law. Nonetheless, Petitioner argues that his plea was unknowing because it was made based on his understanding that he would have a sentence of 27 months if he pleaded guilty to one count of armed robbery. Two years and three months, according to Petitioner's trial counsel, was the low end of the minimum range under the sentencing guidelines if the court did not count the pardoned Georgia conviction.[4] Because the court considered the Georgia conviction, the range was not 27 to 45 months as estimated by Petitioner's counsel. It was instead 81 to 135 months.[5] The court sentenced Petitioner within that range.

The *Boyd* court specifically cautioned against accepting "post hoc claims that [a defendant] subjectively believed the plea agreement to be different[,]" like Petitioner makes here.

---

[4]Counsel stated: "What Mr. Watkins is talking about is what the guideline calculations appeared to be, at least partly. He's talking about the low end of another guideline range which I calculated, but at the time did not take into consideration this Georgia conviction . . . ." (ECF No. 2-1, PageID.92.)

[5]Of course that is still preferable to the minimum sentence range that would have applied if Petitioner had been convicted of two counts of armed robbery and one count of attempted armed robbery.

*Boyd*, 99 Fed.Appx. at 703. To do otherwise would "render[ ] the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statement during the plea colloquy . . . indicating the opposite." *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999). Petitioner's current sworn statement that he made his plea based on the understanding his sentence would not exceed 27 months falls short of the clear and convincing evidence necessary to overcome the state court's finding with respect to the knowing and intelligent nature of his plea.

C. Trial counsel's miscalculation as ineffective assistance

Petitioner finally challenges his plea as invalid because it was made without the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann*, 397 U.S. at 771 & n.14. Counsel's incompetence, according to Petitioner, is apparent in his erroneous calculation of the minimum sentence range. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.

Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. Here, even if counsel's calculation of the minimum sentence range or the communication of that range to Petitioner was unreasonable, Petitioner has failed to show any prejudice. The plea colloquy was sufficient to cure any misunderstanding Petitioner might have had as a result of counsel's alleged

error. *Ramos*, 170 F.3d at 565 (citing *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1992) (the trial court's "thorough examination at the hearing, taking careful and appropriate measures to dispel any confusion on [the defendant's] part before the plea was accepted," cured any claim that the defendant was prejudiced by erroneous "advice from [the defendant's] trial attorney [that allegedly] led to his misunderstanding of the consequences of his guilty plea"); *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992) (the trial court's "clear and thorough plea allocution" apprising the defendant "of the actual sentencing possibilities" prevented the defendant from claiming prejudice under *Strickland*)).

The trial court advised and Petitioner acknowledged that he understood that the conviction carried a maximum penalty of life imprisonment. The trial court further advised and Petitioner admitted that he had been promised no particular sentence. In such circumstances any misadvice by counsel was rendered harmless. The state court therefore reasonably concluded that Petitioner had failed to demonstrate ineffective assistance of counsel.

II. <u>Petitioner's sentence</u>

Petitioner's remaining habeas claims relate to his sentence. Petitioner contends that the trial court improperly departed from the minimum sentence range under the Michigan sentencing guidelines, that his trial counsel rendered ineffective assistance for failing to object to the departure, and that his appellate counsel rendered ineffective assistance because he failed to raise either issue on appeal. Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within

the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

"Michigan has adopted a sentencing scheme based in part on statutorily defined sentencing ranges and in part on sentencing guidelines. The maximum penalty is set by statute, but the minimum penalty is determined by the sentencing court and must fall within a mandated guidelines range." *Montes v. Trombley*, 599 F.3d 490, 496 (6th Cir. 2010) (citation omitted).[6] At the time Petitioner was sentenced, if the court departed from the minimum range specified by application of the Michigan sentencing guidelines, it would have to justify the departure by providing substantial and compelling reasons. *Id.* Petitioner claims the sentencing court failed to justify its departure. The fundamental flaw in Petitioner's position is that the court did not depart from the minimum range specified by the Michigan sentencing guidelines. If the Georgia conviction is included in computing Petitioner's sentence, it is undisputed that the guidelines yield a minimum range of 81 to 135 months. Petitioner's minimum sentence, eight years, fell within that range.

The crux of Petitioner's remaining argument with respect to his sentence is that the court should not have included the Georgia conviction when it computed the minimum sentence range.[7] That claim also centers on application of Michigan's sentencing guidelines and, therefore,

---

[6]Subsequent to the *Montes* court's description of Michigan's sentencing scheme, the Michigan Supreme Court, in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), made the minimum guidelines range advisory and eliminated the requirement that the sentencing court provide a substantial and compelling reason for departing from the minimum sentence range specified by the guidelines. If Petitioner were sentenced today, state law would no longer require the sentencing court to justify its departure from the guidelines minimum range with substantial and compelling reasons.

[7]As a general proposition, it does not violate the constitution for a legislature to enhance the penalty for a current offense based upon the existence of a pardoned prior offense. *Carlesi v. People of the State of New York*, 233 U.S. 51, 59 (1914) ("Indeed, we must not be understood as intimating that it would be beyond the legislative competency to provide that the fact of the commission of an offense after a **pardon** of a **prior** offense should be considered as adding an increased element of aggravation to that which would otherwise result alone from the commission of the **prior** offense.").

typically would not be cognizable in habeas corpus proceedings. *Hutto*, 454 U.S. at 373-74. Nonetheless, a sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980), *quoted in Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. 2005); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)).

Petitioner essentially argues that information regarding the Georgia conviction, upon which the court relied when it sentenced Petitioner, was false, because he had been pardoned. Petitioner's argument depends upon the nature of the Georgia pardon.

In *United States v. Barrett*, 504 F.2d 629 (6th Cir. 1974) the court described the different kinds of pardons:

> [A] pardon may be full or partial, absolute or conditional. A pardon is full when it freely and unconditionally absolves the person from all the legal consequences of his crime and of his conviction, direct and collateral, including the punishment, whether or imprisonment, pecuniary penalty, or whatever else the law has provided; it is partial where it remits only a portion of the punishment or absolves from only a portion of the legal consequences of the crime.

*Id.* at 634 (quoting 67 C.J.S. Pardons § 1b). A "full" pardon is a powerful thing: "A pardon reaches both the punishment prescribed for the offence and the guilt of the offender; and, when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eyes of the law the offender is as innocent as if he had never committed the offence." *Ex parte Garland*, 71 U.S.

333, 380 (1866).  A partial pardon, on the other hand, "'does not obliterate the fact of the commission of the crime . . .; it does not wash out the moral stain; . . . it involves forgiveness and not forgetfulness.'" *Murphy v. Ford*, 390 F. Supp. 1372, 1375 (W.D. Mich. 1975).  Though a full pardon might support Petitioner's position, a partial pardon would not.  *See, i.e., United States v. Barrett*, 504 F.2d 629 (6th Cir. 1974); *United States v. McMichael*, 358 F. Supp. 2d 644 (E.D. Mich. 2005).

An examination of Petitioner's pardon reveals that the Georgia State Board of Pardons and Paroles was willing to forgive, but not willing to forget.  Petitioner was pardoned "unconditionally" and "fully," but the pardon expressly states it should not be taken to imply Petitioner's innocence.  (ECF No. 2-1, PageID.68.)  The fact that the pardon did not remit Petitioner's guilt renders it a partial pardon.  *Barrett*, 504 F.2d at 634 ("It is clear to us that the pardon in the present case was not a full pardon, . . . [t]here was no remission of guilt . . . ."); *McMichael*, 358 F. Supp. 2d at 647 (noting that a pardon without an expungement "does not erase the guilt of the underlying conviction.").  The fact of the conviction, therefore, was not false such that reliance upon it might give rise to a due process violation.  Certainly, the state court's sentence based upon the Georgia conviction was not an unreasonable determination of the facts in light of the evidence presented nor was it contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:     April 20, 2016              /s/ Robert J. Jonker
                                       ROBERT J. JONKER
                                       CHIEF UNITED STATES DISTRICT JUDGE